(December 31, 1892.)

## CUNNINGHAM v. GEORGE, COUNTY AUDITOR.  OTTERSON v. GEORGE.

[31 Pac. 809.]

STATUTE LAW—DIVIDING COUNTY INTO COMMISSIONERS' DISTRICTS— WHO MAY VOTE FOR COMMISSIONERS—CANVASSING BOARD— CERTIFICATE OF ELECTION, TO WHOM ISSUED—COUNTY COMMISSIONERS REQUIRED TO DIVIDE COUNTY INTO DISTRICTS.—The law requiring the county. commissioners to divide the county into county commissioners' districts (section 1748 of the Revised Laws of Idaho) is still in force.

ALL VOTERS IN COUNTY ENTITLED TO VOTE.—The electors of the whole county are entitled to vote for one county commissioner for each district, and such vote must be abstracted as provided for the vote for other county officers.

AUTHORITY OF CANVASSING BOARD.—The canvassing board has no authority to declare who is or is not elected.

TO WHOM AUDITOR TO ISSUE CERTIFICATE.—The auditor, as auditor, must issue certificate to the person in each district having the highest number of votes in the whole county.

(Syllabus by the court.)

Two petitions for a writ of mandate, one by John C. Cunningham, the other by James Otterson.

Texas Angel and H. S. Hampton, for Petitioners.

As the Revised Statutes re-enacted sections 1 and 2 of the act of January 27, 1885, substantially, and omitted sections 3 and 4, it is presumed that such omissions were intentional, and the

repeal of the latter sections was intended. (*In re Wheelock,* 51 Hun, 640, 3 N. Y. Supp. 890; *In re New York Institution for Instruction of Deaf and Dumb,* 55 Hun, 606, 7 N. Y. Supp. 860; *Butler v. Sullivan Co.,* 108 Mo. 630, 18 S. W. 1142; *Moore v. Mausert,* 49 N. Y. 332; *People v. Board of Assessors,* 84 N. Y. 610.) The constitution and the Australian act cover the whole subject matter of the statute (Act Jan. 27, 1885), and are therefore an implied repeal. (Sedgwick's Statutory and Constitutional Law, 105; *Norris v. Crocker,* 13 How. 429; *United States v. Tynen,* 11 Wall. 88; *Pana v. Bowler,* 107 U. S. 529, 2 Sup. Ct. Rep. 704; *State v. Stoll,* 17 Wall. 425; *Daviess v. Fairbairn,* 3 How. 636; *United States v. Claflin,* 97 U. S. 546; *Cook County Nat. Bank v. United States,* 107 U. S. 445, 2 Sup. Ct. Rep. 561; *Heckmann v. Pinkney,* 81 N. Y. 211.)

R. B. Johnson, S. B. Kingsbury and George H. Roberts, for Respondent.

A certificate of election is merely *prima facie* evidence of title to an office; but it is not conclusive, nor is it the only evidence by which the title may be established. It is the fact of election which gives title to the office, and this fact may be established, not only without, but against, the evidence of the certificate. (*Magee v. Calaveras Co.,* 10 Cal. 376; *Sherburne v. Horn,* 45 Mich. 160, 7 N. W. 730; *People v. Cover,* 50 Ill. 100; *State v. Stewart,* 26 Ohio St. 216; *O'Hara v. Powell,* 80 N. C. 103; McCrary on Elections, sec. 335.) The court, having no jurisdiction in this proceeding to recall the certificate issued by the clerk of the board of canvassers by direction of' the board, will not do an idle thing by directing another certificate to issue, for a certificate is in no sense necessary to enable the complainant to assert his rights. (*People v. Supervisors of Greene Co.,* 12 Barb. 221, 222.) The court cannot in this proceeding try the title to the office. (*Warner v. Myers.* 4 Or. 76; *Biggs v. McBride,* 17 Or. 652, 21 Pac. 878; *People v. Harvey,* 62 Cal. 508; *Denver v. Hobart,* 10 Nev. 28; Mechem on Public Offices, secs. 978-981.) *Mandamus* will not be granted to enforce rights under a statute that prescribes an-

other adequate and specific remedy. (McCrary on Elections, secs. 322, 323.) *Mandamus* can only be issued to compel a party to act when it was his duty to act without it. It confers upon him no new authority. (*People v. Gilmer,* 5 Gilm. 249; *Commissioners of Highways v. People,* 66 Ill. 339; *People v. Chicago etc. R. Co.,* 55 Ill. 95, 8 Am. Rep. 631.) A *mandamus* will not issue to compel a public officer to perform a ministerial duty when the evidence shows that his ability to do so depends on the co-operative action of a third person, who is not before the court. (14 Am. & Eng. Ency. of Law, 140, citing *State v. Cavanac,* 30 La. Ann. 237.)

MORGAN, J.—This is a petition filed in this court by the plaintiff against the said defendant, praying that a writ of mandate may be issued, addressed to the said defendant, as auditor of Logan county, in the state of Idaho, directing and requiring the said auditor to make out and deliver to this plaintiff a certificate of election to the office of county commissioner of district No. 2 in the county of Logan, in the state of Idaho. The petitioner in the above-entitled action alleges that Wesley B. George, defendant therein, was on the dates therein mentioned, and is now, the duly qualified and acting clerk of the district court, and *ex-officio* auditor of the county of Logan; that petitioner is a citizen and elector of the county of Logan, in the state of Idaho, and is the John C. Cunningham who was duly nominated to the office of county commissioner of district No. 2 in said county of Logan, state of Idaho, to be voted for at the election to be held on the eighth day of November, 1892, in said county and state; that, pursuant to law, a general election was held in said county of Logan on the eighth day of November, 1892; that at said election certain electors of said county, duly nominated to the office of county commissioner, were voted for by the people of said Logan county for the said office of county commissioner of said Logan county, among them, for county commissioner of district No. 2, Benjamin M. Davis, Charles B. Ford and this plaintiff; that, according to the entire vote cast at said election in said county,

the said John C. Cunningham received a plurality of all the votes cast in the said county, as county commissioner of district No. 2; that the board of county commissioners of said county, acting as a board of canvassers of election, did, subsequent to said election, meet at their office, and canvass the votes of said election, and cause to be made abstracts thereof; that said canvass is complete, and abstract made and signed by said board; that said abstract shows that the plaintiff received the highest number of votes polled in said county for the office of county commissioner of the second district therein (a certified copy of the said abstract is attached to the petition, and marked exhibit "A," and made a part of said petition); that before the commencement of this action the said plaintiff demanded of said Wesley B. George, auditor as aforesaid, that he make out a certificate of election to him, the said John C. Cunningham, in the form provided by law, showing the plaintiff to be elected to the office of county commissioner for the county of Logan, for the second district therein, and deliver said certificate to this plaintiff; that said auditor refused, and still does refuse, so to do; that there is no plain, speedy and adequate remedy in the ordinary course of law; that he is injured by said refusal of said auditor—and prays for a writ of mandate to be issued to said auditor directing him to make out and deliver said certificate to said plaintiff.

After such examination of the authorities as we have been able to make, we are satisfied such writ should issue, providing it appears, by the laws now in force relating thereto, that the said petitioner is entitled to have all the votes cast for him within the limits of Logan county counted for him, and provided, further, that said plaintiff received the highest number of votes cast by said electors for said office.

This brings us to the question as to whether said plaintiff is entitled to have the whole number of such votes so cast for him in said county counted for him, or is he restricted to the votes cast in district No. 2 of said county. Prior to the thirteenth session of the legislature of the territory of Idaho, the county commissioners of the several counties were elected by the votes

of the electors of the county at large. An act was passed by the thirteenth session of said legislature, and approved January 27, 1885, which, so far as it applies to this case, is as follows:

"Section 1. The boards of county commissioners of the several counties of this territory shall, at their regular meeting in July preceding any general election of county commissioners and other county officers, divide their respective counties into three districts, to be known as 'County Commissioners' Districts Nos. 1, 2 and 3,' respectively.

"Sec. 2. Said division shall be made by said board so as to give as nearly as practicable an equal number of resident voters to each of said districts; provided, that in making such division into districts no voting precinct shall be divided.

"Sec. 3. At each succeeding general election one person shall be elected as county commissioner by the voters of each district. Such person so elected shall possess the qualifications prescribed by law, and shall be an actual resident within the district from which he is elected. In canvassing the vote for county commissioners the board of canvassers shall count the votes from each district separately, and shall declare the person receiving the greatest number of votes in each district to be elected.

"Sec. 4. Should a vacancy occur in said board, such shall be filled from the resident voters of the district in which the vacancy occurred." (13th Sess. Laws, p. 85.)

It will be noticed that this act provides that the counties shall be divided into three districts, in such manner as to give each district, as near as may be, an equal number of resident voters, and that no voting precinct shall be divided; that at each succeeding election one person shall be elected county commissioner by the voters of each district, and, among other qualifications, such person shall be an actual resident of the district from which he is elected, and that, in canvassing the vote, the board of canvassers shall count the votes from each district separately, and shall declare the person receiving the greatest number of votes in each district to be elected; and all acts and parts of acts in conflict therewith are repealed.

The next legislation upon the subject we find in sections 465 and 466 of the Revised Statutes of Idaho, which provide that "on the first Monday of November, and every second year thereafter, there must be elected . . . . one county commissioner for each of the three districts of each county." With these sections must be taken the following sections, to wit: "Sec. 1746. Each member of the board of county commissioners must be an elector of the district he represents." "Sec. 1748. At their regular meeting in July preceding any general election, the board of county commissioners must district their county into three districts, as nearly equal in population as may be, to be known as 'County Commissioners' Districts Nos. 1, 2 and 3,' but in making such districts no voting precinct shall be divided." In this act the legislature changed the provisions appearing in the act of 1885 which required the districts to contain as nearly as may be an equal number of resident voters, and, instead thereof, require that the districts shall be so divided as to be as nearly equal in population as may be. It will be seen, also, that the legislature in re-enacting the act of January 27, 1885, which is contained in sections 465 and 466 of the Revised Statutes of Idaho, left out the following provisions, which are contained in that law, to wit: "At each succeeding general election one person shall be elected as county commissioner by the voters of each district, and in canvassing the vote for county commissioners the board of canvassers shall count the votes from each district separately, and shall declare the person receiving the greatest number of votes in each district to be elected." And the following: "Should a vacancy occur in said board, such shall be filled by the resident voters of the district in which the vacancy occurred." The provisions for canvassing the votes, as set forth in the Revised Statutes of Idaho, are substantially as follows: "Sec. 600. The board of commissioners in the several counties must act as a board of canvassers of elections, and must on the tenth day after any general or special election, or sooner if the returns be received, and all the commissioners are present, proceed publicly at their office to open the returns, and canvass the votes of said elec-

tion, and make up abstracts thereof; and it is their duty to canvass and make up abstracts of all returns that are intelligible on their face, and which are sufficiently authenticated to show what returns they are; and if returns are rejected on account of informality, ambiguity, or uncertainty (and none must be rejected for other causes)," etc. "When said canvass is complete, the abstract must be made up and signed by the board. The abstract of votes for delegate to Congress must be on one sheet, and the abstract of votes for member of the territorial council or assembly shall be on one sheet, and the abstract of votes for county, district and precinct officers must be on one sheet. The board must declare the result of the election and cause a certificate of election to be given by their clerk to any person or persons elected to a county, district or precinct office within the county, and certify to each of said abstracts, as herein provided." Up to 1889, then, the law with reference to the election of county commissioners is substantially as follows: "That, at the regular meeting of the board of county commissioners in July preceding any general election, the board shall district their county into three districts, as nearly equal in population as may be; that one county commissioner for each of the three districts of each county shall be elected; that the board of county commissioners in the several counties should act as a board of canvassers of elections; that they canvass the votes of each election, and make up abstracts thereof, among others the abstracts of votes for county, district and precinct officers, and this shall be upon one sheet; and the board must declare the result of the election, and cause a certificate of election to be given by their clerk."

The provision of the law of 1885 requiring the votes of each district to be counted for the commissioners of each district having been left out of the law, it is apparent that the legislature did not intend that the board of canvassers should longer proceed in the manner pointed out in the law of 1885 in the counting of votes for county commissioners. The law, then, as it existed before the passage of the act of 1885, must be followed by said board of canvassers; that is, that the county

commissioner must be elected from each district, but that the voters of the whole county should cast their votes for each of said commissioners, and that such votes should be counted as the law existed prior to 1885. Section 17 of the Revised Statutes provides that "no statute law is continued in force because it is consistent with the provisions of the Revised Statutes upon the same subject; but, in all cases provided for therein, all statute laws heretofore in force in this territory, whether consistent or not with the provisions of the Revised Statutes, unless expressly continued in force, are repealed and abrogated." Section 19 also provides that "all general acts, and parts and clauses of acts of a general nature, passed prior to the fourteenth session of the legislative assembly, are hereby repealed, and these Revised Statutes are in force in lieu thereof." The constitution (section 6, article 18) provides as follows: "The legislature, by general and uniform laws, shall provide for the election biennially in each of the several counties of the state of county commissioners," etc. In pursuance of this section of the constitution, the legislature of the state of Idaho, at its first session, adopted a general election law, approved February 25, 1891 (pages 57 to 108, inclusive). By this law it is enacted: "Section 1. That the provisions hereinafter enacted shall regulate and govern all elections hereafter holden in the state of Idaho for the election of all officers provided by the constitution and laws of the state of Idaho, at either general or special elections, except school district elections." Section 7 provides that "at the general election of 1894, and every fourth year thereafter, there shall be elected in every county of the state a clerk of the district court, who is *ex-officio* auditor and recorder; and at the general election A. D. 1892, and every alternate year thereafter, there shall be elected in every county of the state the following officers, to wit: Three county commissioners; a sheriff; county treasurer, who is *ex-officio* public administrator; probate judge, who is *ex-officio* county superintendent of public instruction; a county assessor, who is *ex-officio* tax collector; one coroner; and one surveyor." Section 27 provides that "certificates of nomination for county and

precinct officers shall be filed with the auditor of the respective counties wherein the officers are to be elected." No mention is made of district officers within the county. The section, however, requiring county commissioners to district the county, being still in force, is operative. Section 101 of said act provides for canvassing the vote by county commissioners, which provisions are substantially as follows: "Sec. 101. The board of county commissioners, the auditor acting as clerk, in the several counties, must act as a board of canvassers of elections, and must, on the tenth day after any general or special election, or sooner if all the returns be received, and any two commissioners are present, proceed publicly at their office to open the returns, and canvass the votes of said election, and make up abstracts thereof; and it is their duty to canvass and make up abstracts of all returns that are intelligible on their face, and which are sufficiently authenticated to show what returns they are." When said canvass is complete, the abstract must be made up and signed by the board.

The abstracts shall be made out in the following manner: The abstract of votes for electors for President and Vice-president of the United States shall be on one sheet, and the abstract of votes for county and precinct officers shall be on another sheet. It will be seen that no mention is made of district officers within the county in this act. The law then goes on to say: "And it shall be the duty of the auditor of the county immediately to make out a certificate of election to each of the persons having the highest number of votes for county and precinct officers, respectively, and cause such certificate to be delivered to the person entitled to it." By this act it will be seen that the board of canvassers are not authorized to declare any person elected to any office, nor are they required or authorized to declare what person has been elected to any office. Having canvassed the returns, they are required to make out abstracts of votes for each of the officers separately as therein directed, and deliver them to the auditor of the county. The law, then, provides that it shall be the duty of the auditor of

the county (not as clerk of the board, but as auditor) immediately to make out a certificate of election to each of the persons having the highest number of votes for county and precinct officers respectively. In the performance of this duty he is not under the direction or control of the board of canvassers, in any sense whatever. He must make out a certificate of election to each person having the highest number of votes. It then becomes the duty of the auditor, as auditor, simply to count the votes as they appear upon the abstract for county and precinct officers respectively, make out his certificate and deliver it to the person entitled to it. The board of canvassers having received and accepted the returns from each voting precinct, cannot reject or refuse to abstract all the votes contained therein for the officers to be elected, respectively. Neither can the auditor reject nor refuse to count any votes whatever, but all of the votes cast in the county, as appears by said abstract for county commissioners, must be counted for each commissioner respectively. Section 181 of said act provides as follows: "All acts and parts of acts enacted by any territorial legislature relating to elections be, and the same are hereby, repealed."

The abstract made out by the board of county commissioners marked exhibit "A," and made a part of the complaint, was complete and proper in every respect, and in accordance with the law as it now stands, until it was mutilated, either by the board or by the auditor, by writing in the words "Counted" and "Not counted," which appear in red ink in various places thereon. These abstracts show as follows: That Thomas Fay received one hundred and fifty-eight votes for county commissioner for district No. 1 of Logan county. James L. Fuller, for commissioner of district No. 1 for Logan county, received two hundred and ninety-one votes. That James Otterson received, as county commissioner for district No. 1, three hundred and thirty-seven votes. James Otterson, having received the highest number of votes cast in the said county of Logan for the office of county commissioner for the first district of said county, is entitled to the certificate of election. For commis-

sioner of district No. 2, Benjamin M. Davis received two hundred and thirty-five votes. For the same office in said district, Charles B. Ford received two hundred and eighty-two votes. For the same office, John C. Cunningham received three hundred and twelve votes. John C. Cunningham, having received the highest number of votes cast in said county for county commissioner of district No. 2, is entitled to the certificate of his election. It is, therefore, the opinion of the court that the certificates of election for the office of county commissioner of Logan county given to James L. Fuller, as commissioner for district No. 1, and Charles B. Ford, as commissioner for district No. 2, are without authority of law, and void; that the paper marked "Proceedings of the Board of Canvassers of Logan County, Idaho," and dated, "Bellevue, Nov. 21, 1892," as purporting to state that James L. Fuller received the highest number of votes for county commissioner in district No. 1, and declaring him to be duly elected to the office of said county commissioner of said Logan county, and stating that Charles B. Ford received the largest number of votes in district No. 2, and purporting to declare the said Fuller and Ford to be elected to the said office of county commissioner of Logan county, is, without authority of law, and void. The said county commissioners have no right or authority, under the law, to declare any person elected to either of said offices. It is ordered that peremptory writ issue herein, as prayed for in complaint.

It having been agreed by the attorneys for the respective parties, in the case of *Otterson v. Wesley B. George, Auditor,* that said cause should abide the decision in this case, and be governed thereby, it is ordered that the peremptory writ issue in the said cause in like form. Costs awarded to petitioner.

Sullivan, C. J., and Huston, J., concur.